■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT JACKSON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Hayes, J.), rendered March 19, 1981, convicting him of sodomy in the first degree, sexual abuse in the first degree, and unlawful imprisonment in the first degree, upon a jury verdict, and imposing sentence. ¶ Judgment reversed, on the law, and indictment dismissed. This case is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. ¶ As a matter of law, the People failed to prove beyond a reasonable doubt defendant's guilt of the crimes charged. The complaining witness, a mildly retarded boy, who was 15 years old at the time of the incident, testified that he was walking home from a friend's house at approximately 6:00 P.M. on May 26, 1980, when he saw a man urinating against a wall in an alley. The man approached him and asked him if he ever had "a woman before" and if he knew "what come means". After complainant answered in the negative, the man grabbed his hand and took him into the alleyway, and up the stairs to the second floor of an abandoned building, where the man forced him to commit repeated acts of fellatio under the threat of throwing him in a "hole" if he did not obey. Complainant testified that at one point during the incident, apparently as the result of the man's ejaculating, he vomited all over the man's pants, and the man stated, "God damn it, my pants are wet". Thereafter, the man brought complainant to another room at the front of the building, and told him not to move. Approximately 10 minutes

later, the man fell asleep, at which point complainant ran downstairs and out of the building. Complainant returned home five minutes later, at approximately 11:30 P.M. He told his mother about the incident, and she called the police. ¶ The police arrived approximately 15 minutes later, and took complainant and his mother to the abandoned building. The police went into the building while complainant and his mother remained outside. Complainant had told police that the man was on the second floor. Police Officer Daniel Gluck testified that on the fourth floor of the building, he saw defendant lying on the floor asleep. The officer said that a "strong noxious odor", which he described as an "[o]ffensive body odor", was coming from defendant. Gluck said that he kicked defendant's foot to wake him up, and told him he was under arrest. Gluck said that because defendant threw a punch at him, he hit defendant across the nose with his nightstick, causing his nose to bleed. Gluck then handcuffed defendant and he and other officers carried defendant down to the front of the building. When they got to the street, defendant attempted to run away, and Gluck tackled him and took him by the hair to the patrol car. Complainant testified that when the police brought defendant out of the abandoned building he saw them beat him with blackjacks. He said they asked him if defendant was the perpetrator, and he responded in the affirmative. In contrast to that testimony, complainant's mother testified that at no time did she observe any police officer hit defendant, and Gluck testified that once defendant had been brought outside, no officer hit him. Gluck even denied ever carrying a blackjack. Gluck testified that he transported defendant back to the precinct, where defendant's brown pants were removed. Those pants were introduced into evidence at trial. ¶ The central issue in this case concerned whether the defendant's identity as the perpetrator was established by sufficient evidence. We conclude that it was not. Most significant in this regard is the fact that while complainant previously testified at a hearing that the perpetrator wore a "grey old looking jump suit that zips up", and testified that the perpetrator had a beard, defendant was wearing brown slacks, and at most had stubble on his face. Moreover, despite the fact that at some point during the incident, the perpetrator apparently ejaculated causing complainant to vomit all over his pants, a lab report revealed that no spermatozoa was found on defendant's pants. Also, while complainant testified that he escaped after the perpetrator fell asleep on the second floor, the defendant was found sleeping on the fourth floor only a short time thereafter. In view of complainant's testimony that many winos hung around the vicinity of the abandoned building, the possibility that the wrong man was apprehended was significant. Finally, the circumstances surrounding complainant's identification of defendant as the perpetrator were somewhat suggestive. Gibbons, J. P., Bracken, Weinstein and Lawrence, JJ., concur.